[No. 5955. Decided April 6, 1906.]

C. H. SPALDING *et al., Respondents,* v. WILLIAM O. LEWIS, *Appellant.*[1]

ACCOUNTING—DECEIT IN SALE OF LANDS—ACTION BY JOINT OWNERS TO RECOVER PRICE RECEIVED—CONTRACTS—CONSTRUCTION—BASIS FOR COMPUTATION. Where one of the joint owners of land negotiated a trade of the land for stock in a corporation, whereby he accounted to his co-owners, and they consented to the trade, upon the basis of a valuation of $25 per acre for the land, and the stock at par value, it is error, in an action for an accounting, to give his co-owners judgment against him figured on the basis of $27.50 per acre for their shares, upon its developing that in the trade made by him the land was valued at $27.50 per acre and the stock at par, he paying the vendor a bonus of $4,280 out of his own pocket, and where it was conceded that the stock was not worth par, or the land $25 per acre, and where the defendant offered to share equally the stock actually received, in case his co-owners would pay their share of the bonus paid by him in the trade; and the plaintiffs not electing to recover actual damages sustained by the deceit, must either share in the contract as made or abide the result.

Appeal from a judgment of the superior court for Adams county, Warren, J., entered June 9, 1905, upon findings in favor of the plaintiffs, after a trial on the merits, in an action for an accounting of profits received in a trade. Reversed.

*O. B. Holcomb,* for appellant.

*Merritt & Merritt,* for respondents.

PER CURIAM.—The appellant and the respondents were the owners as tenants in common of a tract of land situated in Adams county, containing 1120 acres. The land was encumbered by mortgage in the sum of $17,000. The appellant, Lewis, was desirous of selling the land, and his co-owners expressed to him their willingness to do so, provided a purchaser could be found who would take it on satisfactory terms. Later on Mr. Lewis reported to the respondents that the land could be traded to one W. W. King for shares of stock in

1Reported in 85 Pac. 255.

the King Mercantile Company, a corporation doing a mercantile business. King owned, of the corporation's stock, shares of the par value of $18,180, and offered to trade his entire holdings for the land and a bonus of $4,280 in cash; he agreeing to assume the incumbrances on the land. As a basis for making the trade, the land was valued at $27.50 per acre, and the stock at its par value. Mr. Lewis says that, after he received this proposition from Mr. King, he made the same known to the respondents, telling them at the same time that Mr. King would not make the trade unless all of the stock he held in the corporation was taken up, and that it would be necessary to pay King the sum of $4,280 in cash to consummate the trade. He says further that the respondents refused to advance any cash to further the trade, or to take stock in excess of the amount they would receive for their interests in the land; but that, after considerable negotiation, they agreed that, if the crop could be retained and the land valued at twenty-five dollars an acre, they would trade their interests for the stock valued at par. He then says that he made the trade on the terms proposed by King, paying the cash bonus of $4,280 out of his own funds, and afterwards accounted to the respondents for their interests in the property at the rate agreed upon, turning over to them shares of stock of the par value of $7,333.33.

The respondents, however, testify that the appellant told them while the trade was in process of consummation that all that King offered for the land was $25 per acre in stock at its par value, and that nothing was said about the bonus of $4,280 or the fact that the trade was actually being made on a basis of $27.50 per acre; that they first learned these facts from King long after the trade, and that the appellant only admitted them when they went to him after learning the facts from King. They admit, however, that the appellant offered, in case they did not believe they had received their due share of the stock, to divide the whole number of

shares received in the trade evenly between them if they would pay their proportion of the cash bonus given King.

The respondents brought this action on the theory that the appellant had actually received $27.50 per acre for the land, instead of $25 per acre for which he accounted, and that they were entitled to an accounting for the difference. The trial court took this view of the case, holding that the appellant had failed to account for 1886 2-3 shares, which, at 60 cents per share, being the value per share found by it, amounted to $1,120, in which sum it entered judgment in their favor.

The appellant complains of the action of the court, we think justly. As we say, it proceeded on the theory that the appellant had received $27.50 per acre for the land, fraudulently concealed this fact from the respondents, and thereby induced them to part with their interest in the land at $25 per acre. Had the land been worth $27.50 per acre, or had the stock been worth par, there would doubtless have been some foundation for the court's conclusion, but neither of these conditions were true in fact. While the court excluded all direct evidence as to the value of the land, enough does appear to show that even $25 per acre was considerably in excess of its real value. King says that both the land and the stock were valued for the purposes of the trade for more than either was worth; the appellant says the actual value received for the land was about $22 per acre; and the respondents themselves in their complaint allege that the stock was worth but 80 cents on the dollar, yet they were willing, and did actually trade their interest in the land at a valuation of $25 per acre for the stock at par. As to the stock, King says it was worth about 75 cents on the dollar; the appellant 50 or 60 cents, and the court itself found it to be worth but 60 cents. This being true it is plain that the judgment entered by the court is much too large, conceding that the respondents are entitled to recover at all. It is too large because it in effect compels the appellant to take stock at par for the cash he was compelled to pay to complete the trade,

while it is conceded by all the parties, even the court itself, that the stock was worth much less than par. True, the respondents seek to justify this by saying that the purchase by the appellant of the stock over and above what the land paid for was a separate transaction with which the respondents had nothing to do, but this is not the fact. It was all one transaction. The land and the money paid for the stock, and there is no means of finding out from the evidence in this record what part of the stock was purchased with money and what with the land.

It must be remembered that the respondents are not entitled to recover on the principle that the appellant violated his contract with them. This he did not do. They agreed to take this stock at par in payment for their interests in the land at a valuation of $25 per acre. This much they received. They seek to recover more on the principle, as we have stated, that the appellant deceived them. But because he deceived them, they are not entitled to make a new contract with him. They must confine themselves to an action of damages for the deceit, or an equitable proceeding to compel the appellant to permit them to share in the contract he actually made. The action they brought was of the latter nature, and the relief they can obtain in this action is the right to share in the contract as made. But the record shows that the appellant has been willing at all times to share with them the stock he received in the trade if they would assume their part of the burden. He offered before this suit was begun to transfer to them a full two-thirds of all the stock received on their paying two-thirds of the money he was compelled to pay in the trade. In his answer he repeated his offer, and he brought the stock into court and tendered it again at the time of the trial. And since the respondents did not seek relief by way of damages, they should have been compelled to accept the contract as made by the appellant, or abide by their own contract. The judgment of the court does neither and hence must be reversed.

The order of the court will be, therefore, that the judgment appealed from be reversed, and the cause remanded with instructions to permit the respondents, if they so elect within sixty days after the remittitur reaches the trial court, to pay into court for the appellant two-thirds of $4,280, and receive stock in addition to the amount they have already received, sufficient to make two-thirds of the entire amount obtained in the exchange which is the subject of controversy in this action; and if they fail to pay said sum into court within the time named, that their action be dismissed with costs to the appellant.